UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| GUIDEONE NATIONAL INSURANCE COMPANY, as Subrogee of Chesmar Homes, LLC, | § § § § | |
| Plaintiff, | § § | Civil Action No. |
| v. | § § | JURY |
| BIG TEX AIR CONDITIONING, INC., | § § § | |
| Defendant. | § § | |

### GUIDEONE NATIONAL INSURANCE COMPANY'S
### COMPLAINT FOR DECLARATORY JUDGMENT AND OTHER RELIEF

Plaintiff, GuideOne National Insurance Company ("GuideOne"), as subrogee of Chesmar Homes, LLC ("Chesmar"), by and through its undersigned counsel, for its Complaint for Declaratory Judgment and Other Relief against Defendant, Big Tex Air Conditioning, Inc. ("Big Tex"), alleges as follows:

### NATURE OF THE ACTION

1. This matter arises from a fatal accident that occurred on September 27, 2022 during the construction of a single-family home in Katy, Texas, which resulted in the death of Jose Felipe Rivera ("Rivera").

2. At the time of the accident, Rivera was working as an independent contractor for Big Tex, an HVAC contractor hired to install air conditioning accessories in the attic of a home that Chesmar, the general contractor, was building.

3. On November 10, 2022, Rivera's estate (the "Estate") filed a lawsuit against Big Tex and Chesmar in the 133rd Judicial District Court of Harris County, Texas, styled *Juana Beatriz Miranda Navarro, et al. v. Chesmar Homes, LLC and Big Tex Air Conditioning, Inc.*

(Case No. 2022-74352), seeking compensatory damages for Rivera's death (the "Underlying Lawsuit").

4. Pursuant to a Contractor Base Agreement entered into between Big Tex and Chesmar (the "Contract"), Big Tex agreed to indemnify, defend, and hold harmless Chesmar from any and all claims of any nature whatsoever arising out of or in connection with the performance of work on the home project including, without limitation, injury or death of any persons.

5. By letter dated November 22, 2022, GuideOne's third-party claims administrator demanded that Big Tex defend and indemnify Chesmar, pursuant to the terms of the Contract, against the claims asserted against Chesmar in the Underlying Lawsuit.

6. By letter dated December 20, 2022, Chesmar demanded that Big Tex defend and indemnify Chesmar, pursuant to the terms of the Contract, against the claims asserted against Chesmar in the Underlying Lawsuit.

7. On or about November 21, 2023, pursuant to a settlement, GuideOne paid $1 million on behalf of Chesmar which, together with a $500,000 sum paid by another insurer, served to fully extinguish all claims that were asserted against Chesmar in the Underlying Lawsuit. Accordingly, GuideOne is subrogated to the rights of Chesmar.

8. To date, Big Tex has failed to honor its contractual indemnity obligations to Chesmar. GuideOne, as subrogee of Chesmar, seeks to enforce the Contract and make Big Tex honor its contractual obligations.

9. An actual, present, and justiciable controversy has arisen and now exists between GuideOne and Big Tex with respect to the parties' rights and obligations under the Contract, for which the Court's intervention and declaratory relief is required.

**THE PARTIES AND CITIZENSHIP**

10. Chesmar is a limited liability company organized and existing under the laws of the State of Texas, with its principal place of business in Spring, Texas. Chesmar, as subrogor, is a nominal plaintiff in this matter. Chesmar is not seeking to recover damages on its own behalf and is not the real party in interest in the case.

11. GuideOne is an insurance company organized and existing under the laws of the State of Iowa, with its principal place of business in Des Moines, Iowa. As a matter of law and equity, and pursuant to the applicable liability policy that GuideOne issued to Chesmar, GuideOne is subrogated to any right of recovery or cause of action that Chesmar has against Big Tex under the Contract, and is qualified to bring and participate in this case as the real party in interest with respect thereto.

12. Upon information and belief, Big Tex is a corporation organized and existing under the laws of the State of Texas, with its principal place of business in Houston, Texas.

**JURISDICTION AND VENUE**

13. This action is brought, in part, pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq*.

14. This Court has jurisdiction over this action, pursuant to 28 U.S.C. § 1332(a), because complete diversity exists between the parties, and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

15. This Court has personal jurisdiction over Big Tex because it is a Texas corporation and its principal place of business is in Texas.

16. Venue is proper in the Southern District of Texas, Houston Division, pursuant to 28 U.S.C. § 1391(b)(1), because Big Tex resides in this judicial district, and pursuant to 28

U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

## THE ALLEGATIONS IN THE UNDERLYING LAWSUIT

17. On or about November 10, 2022, the Estate filed the Underlying Lawsuit against Chesmar and Big Tex.

18. On or about July 28, 2023, the Estate filed a First Amended Petition. (A true and correct copy of the First Amended Petition is attached hereto as Exhibit 1.)

19. The Estate alleged that, in September 2022, Chesmar was constructing new properties in Katy, Texas. As part of its role as a general contractor, Chesmar allegedly chose and scheduled specialty contractors and controlled the sequence in which work was performed, among other details.

20. On September 27, 2022, Chesmar allegedly hired Big Tex as the subcontractor for air conditioning work at one of the homes under construction. Big Tex, in turn, dispatched Rivera to perform the work at the home.

21. According to the Estate, various dangerous and preventable conditions, of which Big Tex and Chesmar were aware, combined to cause Rivera's fall from the third-floor attic to the first-floor concrete foundation of the home. Rivera died as a result of the fall.

22. The Estate asserted causes of action against Chesmar for negligence and premises liability and against Big Tex for negligence.

23. By way of relief, the Estate sought compensatory damages.

## THE CONTRACT

24. On March 31, 2022, Chesmar and Big Tex entered into the Contract. (A true and correct copy of the Contract is attached hereto as Exhibit 2.) In the Contract, Chesmar is referred to as "Builder" and Big Tex is referred to as "Contractor."

25. Section 2.9 of the Contract contains certain indemnification obligations owed from Big Tex to Chesmar (the "Indemnity Provision"):

> **INDEMNITY AND RELEASE. CONTRACTOR AGREES TO INDEMNIFY, DEFEND, AND HOLD HARMLESS BUILDER, ITS PARENT, AFFILIATES, SUBSIDIARIES, OFFICERS, DIRECTORS, AGENTS AND EMPLOYEES (THE "INDEMNIFIED PARTIES") FROM AND AGAINST, AND HEREBY RELEASES THE INDEMNIFIED PARTIES FROM, ANY AND ALL CLAIMS, LIABILITIES, OR DEMANDS OF ANY NATURE WHATSOEVER ARISING OUT OF OR IN CONNECTION WITH THE PERFORMANCE OF THE WORK, INCLUDING WITHOUT LIMITATION CONSEQUENTIAL DAMAGE, LOSS OF PROFITS, DAMAGE TO PROPERTY, AND INJURY TO OR DEATH OF ANY PERSONS WHATSOEVER, EVEN THOUGH CAUSED OR ALLEGED TO BE CAUSED BY THE JOINT, COMPARATIVE, OR CONCURRENT NEGLIGENCE OR FAULT OF THE INDEMNIFIED PARTIES, AND EVEN THOUGH ANY SUCH CLAIM, LIABILITY, OR DEMAND IS BASED UPON OR ALLEGED TO BE BASED UPON THE STRICT LIABILITY OF THE INDEMNIFIED PARTIES. THIS INDEMNITY AND RELEASE PROVISION IS INTENDED TO INDEMNIFY THE INDEMNIFIED PARTIES AGAINST, AND TO RELEASE THEM FROM THE CONSEQUENCES OF THEIR OWN NEGLIGENCE OR FAULT AS PROVIDED ABOVE WHEN SUCH PARTIES ARE JOINTLY, COMPARATIVELY, OR CONCURRENTLY NEGLIGENT WITH CONTRACTOR.**

26. The parties' intent that Big Tex will indemnify Chesmar from the consequences of its own negligence or fault is set forth in clear and specific terms in the Indemnity Provision.

27. Further, the Indemnity Provision is conspicuously displayed in bold, capitalized typeface in a manner that calls attention to itself such that any reasonable person would notice it.

28. The Indemnity Provision satisfies Texas' fair notice requirements and, therefore, is valid and enforceable.

29.     Big Tex's contractual indemnity obligation was insured by Hallmark Specialty Insurance Company ("Hallmark") up to $1 million.

## COUNT I – BREACH OF CONTRACT

30.     GuideOne restates and incorporates by reference each and every allegation set forth in the preceding paragraphs as though set forth in full herein.

31.     The Indemnity Provision requires Big Tex to indemnify, defend, and hold harmless Chesmar from any and all claims of any nature whatsoever arising out of or in connection with the performance of work on the home project including, without limitation, injury or death of any persons.

32.     The scope of Big Tex's contractual indemnity obligation to Chesmar is not limited.  Indeed, Big Tex's contractual duty to defend and indemnify Chesmar is separate and independent from any duties Hallmark owed Big Tex under the liability policy that Hallmark issued to Big Tex.  Thus, Big Tex's contractual indemnity obligation is not subject to any cap or maximum.

33.     By letter dated November 22, 2022, GuideOne's third-party claims administrator demanded that Big Tex defend and indemnify Chesmar, pursuant to the terms of the Contract, against the claims asserted against Chesmar in the Underlying Lawsuit.

34.     By letter dated December 20, 2022, Chesmar demanded that Big Tex defend and indemnify Chesmar, pursuant to the terms of the Contract, against the claims asserted against Chesmar in the Underlying Lawsuit.

35.     On or about January 27, 2023, Chesmar filed a crossclaim against Big Tex in the Underlying Lawsuit citing the Indemnity Provision in the Contract and seeking reimbursement of

all damages it sustained or would thereafter sustain in connection with its defense of the Underlying Lawsuit.

36. GuideOne later agreed to contribute $1 million toward a settlement of all claims against Chesmar in the Underlying Lawsuit.

37. On or about November 28, 2023, GuideOne, as subrogee of Chesmar, demanded indemnification from Big Tex, pursuant to the terms of the Contract, in the amount of $1 million.

38. To date, Big Tex has not responded to GuideOne's demand.

39. Consequently, Big Tex has failed to honor its contractual defense and indemnity obligations to Chesmar (and GuideOne, as subrogee of Chesmar).

40. Big Tex's conduct constitutes a breach of contract.

41. Chesmar satisfied all conditions precedent for performance under the Contract.

42. As a result of Big Tex's breach of the Contract, GuideOne has sustained damages including, but not limited to, the $1 million sum that it paid to settle and fully resolve all claims against Chesmar in the Underlying Lawsuit, plus attorneys' fees, costs, and expenses incurred in prosecuting the present action.

## **COUNT II – CONTRACTUAL INDEMNIFICATION**

43. GuideOne restates and incorporates by reference each and every allegation set forth in the preceding paragraphs as though set forth in full herein.

44. There exists an Indemnity Provision in the Contract.

45. The Indemnity Provision requires Big Tex to indemnify, defend, and hold harmless Chesmar from any and all claims of any nature whatsoever arising out of or in connection with the performance of work on the home project including, without limitation, injury or death of any persons.

46. Claims implicating Big Tex's contractual obligations under the Indemnity Provision were made against Chesmar in the Underlying Lawsuit.

47. All conditions precedent for recovery have occurred, been performed, waived, or excused.

48. GuideOne has sustained damages including, but not limited to, the $1 million sum that it paid to settle and fully resolve all claims against Chesmar in the Underlying Lawsuit, plus attorneys' fees, costs, and expenses incurred in prosecuting the present action.

49. Under Texas law, Big Tex's contractual indemnity obligation under the Contract is primary to any general liability insurance coverage that is otherwise available to Chesmar.

## COUNT III – COMMON LAW INDEMNIFICATION

50. GuideOne restates and incorporates by reference each and every allegation set forth in the preceding paragraphs as though set forth in full herein.

51. The Indemnity Provision requires Big Tex to indemnify, defend, and hold harmless Chesmar from any and all claims of any nature whatsoever arising out of or in connection with the performance of work on the home project including, without limitation, injury or death of any persons.

52. Pursuant to the Indemnity Provision, Big Tex was primarily liable for the entire sum paid in settlement to resolve all claims against Chesmar in the Underlying Lawsuit.

53. GuideOne, however, paid $1 million toward the settlement that resolved all claims against Chesmar in the Underlying Lawsuit.

54. GuideOne's settlement contribution was paid involuntarily.

55. GuideOne is entitled to judgment in the amount of $1 million based upon the principles of common law indemnification.

## **COUNT IV – EQUITABLE SUBROGATION**

56. GuideOne restates and incorporates by reference each and every allegation set forth in the preceding paragraphs as though set forth in full herein.

57. Big Tex is primarily obligated to defend and indemnify Chesmar in connection with the claims asserted in the Underlying Lawsuit, but has failed to fulfill its contractual obligation to do so.

58. In order to protect Chesmar's interests, and in an exercise of good faith, GuideOne paid $1 million to fully extinguish all claims asserted against Chesmar in the Underlying Lawsuit.

59. GuideOne's payment of $1 million to settle all claims asserted against Chesmar in the Underlying Lawsuit was an involuntary payment of a sum primarily owed by Big Tex, for which equitable relief is appropriate.

60. Chesmar has an existing, assignable cause of action against Big Tex.

61. Justice requires that any purported indemnity obligation with respect to settlement be shifted from GuideOne to Big Tex.

62. GuideOne has been damaged in the amount of $1 million by virtue of its payment to settle claims asserted against Chesmar in the Underlying Lawsuit.

63. GuideOne is entitled to recover $1 million from Big Tex because GuideOne is subrogated to Chesmar's rights against Big Tex, which rights include Chesmar's contractual entitlement to indemnification from Big Tex for claims asserted against Chesmar in the Underlying Lawsuit.

## COUNT V – PROMISSORY ESTOPPEL
**(Pled In the Alternative)**

64. GuideOne restates and incorporates by reference each and every allegation set forth in the preceding paragraphs as though set forth in full herein.

65. Pursuant to the terms of the Contract, Big Tex made promises that it would indemnify, defend, and hold harmless Chesmar from any and all claims of any nature whatsoever arising out of or in connection with the performance of work on the home project including, without limitation, injury or death of any persons.

66. It was foreseeable to Big Tex that Chesmar would rely on Big Tex's promises contained in the Contract, including those set forth in the Indemnity Provision.

67. Chesmar reasonably and substantially relied upon the promises contained in the Contract, including those set forth in the Indemnity Provision, to its detriment.

68. Big Tex has failed to honor its contractual defense and indemnity obligations to Chesmar (and GuideOne, as subrogee of Chesmar).

## PRAYER FOR RELIEF

WHEREFORE, GuideOne National Insurance Company, as subrogee of Chesmar Homes, LLC, respectfully requests that this Court enter judgment in its favor, as delineated above, together with pre- and post-judgment interest and all costs, disbursements, and attorneys' fees incurred in connection with the prosecution of this action. GuideOne further requests any other and further such relief as this Court deems just and appropriate.

## JURY DEMAND

GuideOne National Insurance Company, as subrogee of Chesmar Homes, LLC, hereby demands a trial by jury pursuant to Fed. R. Civ. P. 38(b) and tenders the appropriate fee with this pleading.

Dated:  December 4, 2023	Respectfully submitted,

	*/s/ Natasha N. Taylor*
	Natasha N. Taylor
	Texas Bar No. 24071117
	Federal Bar No. 1102665
	*Attorney-in-Charge*
	WRIGHT CLOSE & BARGER, LLP
	One Riverway, Suite 2200
	Houston, TX 77056
	Telephone:  (713) 572-4321
	Email:  taylor@wrightclosebarger.com

	Jordon S. Steinway*
	Katherine A. Martin*
	BATESCAREY LLP
	191 North Wacker, Suite 2400
	Chicago, IL 60606
	Telephone:  (312) 762-3169
	Email:  jsteinway@batescarey.com
	Email: kmartin@batescarey.com
	**Pro Hac Vice Admission to Be Filed*

	*Counsel for GuideOne National Insurance Company*